**In re Donal Ewing RADER & Penny Lou Rader, Debtors.**

**Bankruptcy No. 92–41356–2.**

United States Bankruptcy Court, W.D. Missouri.

Sept. 15, 1992.

Larry G. Chipman, Independence, Mo., for debtors.

Richard F. Haitbrink, Mission Woods, Kan., for Snap–On Tools Corp.

Kendall R. Garten, Blue Springs, Mo., for Blue Springs Ford Sales, Inc.

## MEMORANDUM OPINION

### FRANK W. KOGER, Chief Judge.

This matter comes before the Court on Debtors' motion to avoid the execution lien of Blue Springs Ford on Mr. Rader's tools. The Court filed a summary order on August 3, 1992, advising the parties that Debtors' motion was granted. This opinion sets out the Court's reasons and authority for that action.

### FACTS

The lien in question was an execution lien effected by Blue Springs Ford when it seized Mr. Rader's mechanic tools prior to Debtors filing their bankruptcy petition. In July of 1991, Blue Springs Ford obtained a judgment against Mr. Rader in the amount of $6,647.28. Pursuant to that judgment, Blue Springs Ford seized Mr. Rader's tools. Debtors have claimed the tools as exempt property and applied Mr.

Rader's tools-of-the-trade exemption, Mo. Rev.Stat. § 513.430(4), his head-of-the-family exemption, Mo.Rev.Stat. § 513.440, and his wildcard exemption, Mo.Rev.Stat. § 513.430(3). In addition, Debtors have applied a portion of Mrs. Rader's wildcard exemption to the tools. Debtors asked the Court to avoid the lien of Blue Springs Ford pursuant to § 522(f) to the extent that the lien impairs exemptions to which Debtors would otherwise be entitled.

Also appearing in the matter was Snap–On Tools who claimed a competing interest in the tools pursuant to its purchase money security agreements. Snap–On introduced into evidence three purchase-money security agreements dated October 10, 1988, March 30, 1989, and December 10, 1990. These security interests, were not perfected by filing.

### DISCUSSION

■ The first issue to be settled is the valuation of the tools which Blue Springs Ford seized and in which Snap–On claims a security interest. Evidence as to valuation was given by Debtors, Blue Springs Ford, and Snap–On. Predictably, Debtors' valuation was considerably lower than that of the other parties. Considering the valuations given by all three parties, the Court finds that the value of the seized tools is $8,104.50. This represents a 10% reduction from the $9,005 valuation given by Blue Springs Ford. That figure was the most credible because the witness testified that his figures represented the value of the tools at auction as opposed to Debtors' "garage sale" valuation and Snap–On's "retail price." Nonetheless, the Court finds that figure to be somewhat high and accordingly, has chosen a slightly reduced figure.

■ The second issue that the Court will deal with is the question of the validity and priority of Blue Springs Ford's execution lien. Debtors and Snap–On claim that Blue Springs Ford does not have a valid execution lien because they had prior actual knowledge of the lien of Snap–On. Such argument not only blurs the distinction between the validity of a lien and the priority

of a lien, but it also evidences a misunderstanding of lien priorities under the UCC.

■ Execution and levy creates a lien on personal property that arises at the time of the execution. The lien is valid notwithstanding any prior knowledge of a security interest held by another party. However, the execution lien creditor does take subject to other properly perfected security interests. So, other security interests will not invalidate a proper execution lien, but they may make it irrelevant if the property is sufficiently encumbered with prior interests.

The existence of prior security interests becomes important as to the question of lien priority. On that topic, Mo.Rev.Stat. § 400.9–301 governs. Pursuant to that section, an unperfected security interest is subordinate to the interest of a lien creditor who becomes a lien creditor before the security interest is perfected. Mo.Rev. Stat. § 400.9–301(1)(b). Knowledge of the prior interest is not relevant to priority under the UCC.

Furthermore, Mr. Rader's rather vague testimony that, several months before Blue Springs Ford executed on his tools, he had mentioned to a representative of Blue Springs Ford that the tools were not paid for does not convince the Court that Blue Springs Ford did, in fact, have actual knowledge of prior security interests.

■ The question then arises whether Snap–On possesses a properly perfected security interest in Debtor's tools. The Court finds that Snap–On's security interest is unperfected. There is no dispute about the fact that Snap–On did not perfect its interest by filing a UCC–1; Snap–On's counsel stated in the hearing that no UCC–1 was filed. The question, then, is whether they are perfected in the absence of filing. Mo.Rev.Stat. § 400.9–302(1)(d) provides that a purchase money security interest in consumer goods is perfected without filing. But Mo.Rev.Stat. § 400.9–109 defines "con-

sumer goods" as goods which are "used or bought for use primarily for personal, family, or household purposes." Mr. Rader's tools, however, were used in his business. They are not consumer goods and so Snap–On's interest is not perfected under that section. Nor does Snap–On's security interest meet any other criteria for perfection without filing. Therefore, the Court finds that Snap–On's purchase money security interest is unperfected and that the execution lien of Blue Springs Ford takes priority over Snap–On's unperfected purchase money security interest.

■ In the hearing, Debtors' counsel also raised the issue of whether Blue Springs Ford's lien was avoidable as a preferential transfer under § 547 of the Code. The Court will not address that issue for two reasons. Debtors' motion did not plead an action for lien avoidance under § 547, so the issue was never properly brought before the court. Further, as a general rule, it is the trustee who must bring actions to avoid transfers under § 547 [1] and Trustee has not done so in this case.

■ Finally, the Court finds that Blue Springs Ford's lien is avoidable by Debtors to the extent that the lien impairs their exemptions in the tools. Section 522(f) allows the debtor to avoid the fixing of a judicial lien to the extent that such lien impairs an exemption to which the debtor is entitled under § 522(b). Blue Springs Ford's lien is a judicial lien as that term is used in the statute and the lien does impair exemptions to which Debtors are entitled under § 522(b) and Mo.Rev.Stat. §§ 513.-430 & 513.440. Debtors have claimed Mr. Rader's tools of the trade exemption of $2000.00 under Mo.Rev.Stat. § 513.430(4); his wildcard exemption of $400.00 under § 513.430(3); and his head-of-the-family exemption of $1350.00 under § 513.440. In addition, Mrs. Rader applied $213.00 of her wildcard exemption under § 513.430(3) to

1. The Court recognizes that § 522(h) empowers debtors to bring such actions where a transfer is avoidable under § 547 and the trustee has failed to act. However, the relief under § 522(h) is limited to avoiding the transfer to the extent that the debtor could have exempted the property. Given the fact that the Court will grant Debtor relief under § 522(g) to the extent of his claimed exemptions, relief under § 522(h) would be redundant.

the tools. The Court, therefore, finds that under § 522(f) the lien of Blue Springs Ford is avoidable to the extent of Debtors' claimed exemption of $3963.00.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.